



# OPINION

No. 04-09-00546-CV

**SAN ANTONIO EXTENDED MEDICAL CARE, INC**. D/B/A Med Mart
Appellant

v.

Ruben **VASQUEZ**, Individually, and as Administrator of the Estate of Ruben Vasquez, Jr.,
Deceased and Oralia Vasquez, Joe Jimenez, and Rosa Ward,
Appellees

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-20411
Honorable Andy Mireles, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Phylis J. Speedlin, Justice

Delivered and Filed: February 3, 2010

REVERSED AND RENDERED

In this interlocutory appeal, San Antonio Extended Medical Care, Inc. d/b/a Med Mart ("Med

Mart") challenges the trial court's order denying its motion to dismiss filed pursuant to section

74.351(a) of the Texas Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN.

§ 74.351(a) (Vernon Supp. 2009). We reverse the judgment of the trial court and render judgment

dismissing the cause.

**BACKGROUND**

On April 7, 2008, Ruben Vasquez, Jr. ("Mr. Vasquez") underwent a tracheostomy. Ten days after the surgery, he was discharged from the hospital under doctor's orders to receive home oxygen therapy and trachea care. Med Mart delivered two oxygen tanks to Mr. Vasquez's home on April 17, 2008. The following day, Mr. Vasquez's wife called Med Mart and informed them that her husband was running low on oxygen. She again informed Med Mart that the oxygen supply was low on April 19, but another delivery was not made. Later that day, Mr. Vasquez became unconscious and was transported to the hospital by EMS. He died the next day.

Thereafter, on December 9, 2008, Ruben Vasquez, individually, and as administrator of the Estate of Ruben Vasquez, Jr., deceased, and Oralia Vasquez, Joe Jimenez, and Rosa Ward (collectively, "Vasquez") sued Med Mart alleging, among other claims, that Mr. Vasquez's death was proximately caused by the negligent acts and/or omissions of Med Mart, including: failing to provide adequate oxygen tanks as ordered; failing to respond to requests by Mr. Vasquez's family for an adequate oxygen supply; failing to institute safeguards to insure that patients such as Mr. Vasquez would always have an adequate supply of the medical supplies, including oxygen; and failing to provide adequate oxygen supply as ordered by his treating doctors.

On May 14, 2009, Med Mart filed a motion to dismiss claiming Vasquez failed to serve his 120-day expert report as required by section 74.351(a) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2009). Vasquez filed a motion to strike the motion to dismiss and a response to the motion to dismiss claiming that he is not subject to the requirements of section 74.351 because he did not assert a health care liability claim against Med Mart and because Med Mart is not a health care provider. Alternatively, Vasquez

argued in the motions that he complied with section 74.351 by filing an autopsy report attached to a *Stowers* demand letter within the 120-day expert report deadline and that the report was not objected to by Med Mart. The trial court denied the motion to dismiss without making findings of fact or conclusions of law, but orally stated that the evidence did not demonstrate Med Mart to be a health care provider.

### STANDARD OF REVIEW AND APPLICABLE LAW

We generally review a trial court's order granting a motion to dismiss for failure to timely file a section 74.351(a) expert report under an abuse of discretion standard. *Pedroza v. Toscano*, 293 S.W.3d 665, 666 (Tex. App.—San Antonio 2009, no pet.); *Holguin v. Laredo Reg'l Med. Centr., L.P.*, 256 S.W.3d 349, 352 (Tex. App.—San Antonio 2008, no pet.). However, when the issue presented requires a statutory interpretation or a determination of whether Chapter 74 applies to a claim, *i.e.*, questions of law, we use a *de novo* standard of review. *Brown v. Villegas*, 202 S.W.3d 803, 805 (Tex. App.—San Antonio 2006, no pet.). Whether a claim is a health care liability claim is a question of law. *Inst. for Women's Health, P.L.L.C. v. Imad*, No. 04-05-00555-CV, 2006 WL 334013, at *1 (Tex. App.—San Antonio Feb.15, 2006, no pet.) (mem. op.); *Lee v. Boothe*, 235 S.W.3d 448, 451 (Tex. App.—Dallas 2007, pet. denied).

Section 74.351(a) provides that a health care liability claimant must file an expert report for each physician or health care provider defendant within 120 days after filing the claim. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). If the required report has not been served by the 120-day deadline, on proper motion by a defendant, the trial court must dismiss the action with prejudice and award reasonable attorney's fees and court costs incurred by the defendant. *Id.* § 74.351(b) (Vernon Supp. 2009).

A "health care liability claim" is defined as:

> [A] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (Vernon 2005). Whether a claim falls within the definition of a health care liability claim requires an examination of the "essence" or "underlying nature" of the claim. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005); *Holguin*, 256 S.W.3d at 352. "A cause of action against a health care provider is a health care liability claim . . . if it is based on a claimed departure from an accepted standard of medical care, health care, or safety of the patient, whether the action sounds in tort or contract." *Diversicare*, 185 S.W.3d at 848. "A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical services." *Id.* The necessity of expert testimony from a medical or health care professional may be a factor in determining whether a claim is an inseparable part of the rendition of medical or health care services. *Id.* However, the fact that expert testimony may not ultimately be necessary to support a verdict at trial does not necessarily mean the claim is not a health care liability claim. *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) (per curiam).

### DISCUSSION

On appeal, Med Mart argues the trial court abused its discretion in denying its motion to dismiss because Vasquez asserted a health care liability claim and was therefore required to serve an expert report. In support, Med Mart asserts that Vasquez's claims for negligence based on Med Mart's alleged failure to furnish adequate oxygen to Mr. Vasquez meet all three prongs of a health

care liability claim. It is undisputed that Vasquez alleged that Med Mart caused Mr. Vasquez's death by failing to deliver oxygen; thus, the third element necessary to establish a health care liability claim—that the plaintiff must allege that the defendant's action proximately caused injury to or death of a claimant—has been satisfied. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). Accordingly, we must determine whether Med Mart is a health care provider, and, if so, whether the claims asserted by Vasquez claimed a departure from the accepted standards of health care. *See id.*

**1.** *Health Care Provider*

A health care liability claim is a cause of action against a health care provider or physician. *Id.* A "health care provider" is defined as:

> [A]ny person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including: (i) a registered nurse; (ii) a dentist; (iii) a podiatrist; (iv) a pharmacist; (v) a chiropractor; (vi) an optometrist; or (vii) a health care institution.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A) (Vernon 2005).[1] The list is not exclusive. *See Christus Health v. Beal*, 240 S.W.3d 282, 286 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 2005), which provides that "including" is a term of enlargement and not of limitation). The statute defines "health care" as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10) (Vernon 2005).

---

[1] The term "health care provider" also includes: (i) an officer, director, shareholder, member, partner, manager, owner, or affiliate of a health care provider or physician; and (ii) an employee, independent contractor, or agent of a health care provider or physician acting in the course and scope of the employment or contractual relationship. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(B) (Vernon 2005).

At the hearing on the motion to dismiss, Carlos Barrera, Med Mart's vice president, testified that Med Mart is a company licensed by the Texas Department of Health and licensed as a prescription drug firm. Barrera further stated that oxygen is a drug which requires a doctor's prescription. It is undisputed that Mr. Vasquez was prescribed oxygen by his treating physician, Dr. Mark W. Hatch, who ordered that he be released from the hospital and treated at home with oxygen therapy. It is likewise undisputed that Med Mart was the entity selected to provide home health care services for Mr. Vasquez. Physicians' orders were faxed to Med Mart by the hospital. Med Mart contends that these attributes make it a health care provider. Vasquez counters that Med Mart cannot be a health care provider because it is not specifically listed as such in the statute and because it is merely licensed by the State as a distributor or manufacturer, not as a health care provider.

We agree that Med Mart qualifies as a health care provider. The record contains evidence that Med Mart is licensed by the Texas Department of State Health Services as a prescription drug firm (manufacturer) and as a licensed device firm (distributor and manufacturer). Further, the record contains testimony from Med Mart's vice president, who stated that a prescription drug firm license is the same license held by pharmacies. Unlike in *Brown v. Villegas*, where we held that the alleged health care provider failed to prove its status as such by not including proof that it was "licensed, certified, registered, or chartered by the State of Texas to provide health care," Med Mart met its burden of establishing licensure by the State. *See Brown*, 202 S.W.3d at 806. Although Vasquez contends that the evidence merely demonstrates Med Mart held a license to distribute and manufacture drugs—not to provide health care—our reading of the statute leads us to conclude that such licenses meet the definition of a health care provider. *See Pedroza*, 293 S.W.3d at 668 (noting that to ascertain the legislative intent of a statute, we begin with its plain language); *Marks v. St.*

*Luke's Episcopal Hosp.*, No. 07-0783, 2009 WL 2667801, at *3 (Tex. Aug. 28, 2009) ("When interpreting a statute, we read words and phrases in context and construe them according to the rules of grammar and common usage."). The statute merely requires that the provider be licensed to "provide health care." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A). "'Health care' means any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10). As will be discussed below, Med Mart supplied prescription-ordered oxygen therapy to Mr. Vasquez. At a minimum, the delivery of the oxygen constituted an "act" performed by Med Mart for Mr. Vasquez during his treatment. *See id.* Even though the oxygen was delivered to Mr. Vasquez's home, he was released from the hospital under doctor's orders to receive home oxygen therapy, without which he was incapable of breathing. *See, e.g., Tesoro v. Alvarez*, 281 S.W.3d 654, 660 (Tex. App.—Corpus Christi 2009, no pet.) (location at which health care is performed or furnished is not determinative of whether claim constitutes a health care liability claim). Accordingly, we hold that on this record, there was sufficient evidence to prove Med Mart's status as a health care provider. We next examine whether Vasquez's claims alleged a claimed departure from the accepted standards of health care.

### 2.    *Claimed Departure from Accepted Standards of Health Care*

To establish a health care liability claim, the act or omission complained of must be an inseparable part of the rendition of health care services. *See Diversicare*, 185 S.W.3d at 848; *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 544 (Tex. 2004). A factor in considering whether a cause of action is an inseparable part of the rendition of health care services is whether expert

testimony from a medical or health care professional is necessary to prove a claim. *Diversicare*, 185 S.W.3d at 848; *Espinosa v. Baptist Health Sys.*, No. 04-05-00131-CV, 2006 WL 2871262, at *1 (Tex. App.—San Antonio Oct. 11, 2006, pet. denied) (mem. op.). Here, Vasquez alleged that Mr. Vasquez's death was proximately caused by the negligent acts and/or omissions of Med Mart, including: failing to provide adequate oxygen tanks as ordered; failing to respond to requests by Mr. Vasquez's family for an adequate oxygen supply; failing to institute safeguards to insure that patients such as Mr. Vasquez would always have an adequate supply of the medical supplies, including oxygen; and failing to provide adequate oxygen supply as ordered by his treating doctors. On appeal, Med Mart contends that Vasquez's claims are inseparably and inextricably linked to the rendition of Mr. Vasquez's health care because his death is alleged to have been caused, at least in part, by Med Mart's failure to provide him with oxygen which was prescribed by his doctor as post-operative treatment. In response, Vasquez maintains that Med Mart was merely delivering oxygen to Mr. Vasquez and was not required to remain at his bedside as the oxygen was used; therefore, the delivery of oxygen tanks cannot be an inseparable part of the rendition of medical or health care services.

The facts of this case are similar to those in *Valdez v. Lopez Health Systems*, where the plaintiff's daughter died after a home health care service worker removed the portable suction machine required for her survival. *Valdez v. Lopez Health Sys., Inc.*, No. 04-04-00023-CV, 2005 WL 1629803, at *1 (Tex. App.—San Antonio July 13, 2005, no pet.) (mem. op.). The plaintiff alleged that the home health service was negligent in failing to provide necessary medical equipment. *Id.* This court held that the plaintiff's claims were governed by section 74.351 because in order to establish liability, the plaintiff would have to prove the standard of care applicable to home health

care providers and then show that the standard was breached. *Id.* at *2. Similarly, in order to establish that Med Mart was negligent in failing to provide necessary medical equipment to Mr. Vasquez, Vasquez would have to prove that the standard of care applicable to a health care provider required Med Mart to deliver oxygen and that Med Mart breached that standard. Thus, Vasquez has complained of acts or omissions that occurred during Mr. Vasquez's treatment by Med Mart. *See Rose*, 156 S.W.3d at 544. Accordingly, we conclude Vasquez's claims against Med Mart asserted an alleged departure from the accepted standards of health care.

This conclusion is further bolstered by the fact that expert testimony will be required to prove Vasquez's claims. *See id.* (noting that one consideration in determining whether alleged act or omission is inseparable part of health care is proving claim would require specialized knowledge of an expert). As Med Mart notes, Vasquez alleged more than a mere failure to deliver oxygen. It is undisputed that Med Mart delivered two oxygen tanks to Mr. Vasquez. One was half full and the other was a quarter full. The Med Mart technician set the flow rate of the tanks at two liters per minute. The question, therefore, is whether an adequate supply of oxygen was delivered. Med Mart argues that it is not within the common knowledge of the general public to know whether the correct flow rate was set or whether there was an adequate supply of oxygen delivered in the first instance. *See Diversicare*, 185 S.W.3d at 848, 851. We agree. Expert testimony is required to establish whether the oxygen tanks were set at the correct flow level or whether an adequate supply of oxygen was delivered to Mr. Vasquez. Such information is not within the common knowledge of the general public. *See Rose*, 156 S.W.3d at 544; *Imad*, 2006 WL 334013, at *3. Accordingly, we conclude that Vasquez's claims meet all three prongs of a health care liability claim: Med Mart is a health care provider whose actions allegedly caused Mr. Vasquez's death and the essence of Vasquez's claims

is inextricably intertwined with the rendition of heath care services. *See Rose*, 156 S.W.3d at 546; *Holguin*, 256 S.W.32d at 353.

Having concluded that Vasquez brought suit asserting a health care liability claim subject to section 74.351, the trial court was required to dismiss the cause pursuant to Med Mart's motion unless an expert report was timely served by Vasquez. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Vasquez contends he satisfied the statutory requirements by tendering Dr. Levy's autopsy report and curriculum vitae. Med Mart responds that the "report" filed by Vasquez is not an expert report at all, but instead an autopsy report attached to a *Stowers* demand letter that fails to name Med Mart, much less connect Med Mart's conduct to Mr. Vasquez's death. We agree. Assuming *arguendo* that a plaintiff can serve an expert report in the manner used here, the report completely fails to name Med Mart, other than to state, "Medmart was to provide the local supplies, some of which [Mr. Vasquez] already had." *See Garcia v. Marichalar*, 185 S.W.3d 70, 71-72 (Tex. App.—San Antonio 2005, no pet.) (holding report that failed to name defendant health care provider was not an expert report as defined by section 74.351); *Bogar v. Esparza*, 257 S.W.3d 354, 360 (Tex. App.—Austin 2008, no pet.) (holding report served within 120-day deadline that fails entirely to implicate the conduct of a defendant is not merely deficient, but is in effect no report as to that defendant). We cannot conclude that the alleged report here represents "an objective good faith effort to comply with the definition of an expert report." *Jones v. King*, 255 S.W.3d 156, 159-160 (Tex. App.—San Antonio 2008, pet. denied); TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (Vernon Supp. 2009) (defining an "expert report"). Accordingly, we hold the trial court erred in failing to dismiss Vasquez's claims against Med Mart for failure to timely serve an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).

## CONCLUSION

Based on the reasons stated above, we reverse the trial court's order denying Med Mart's motion to dismiss, and render judgment dismissing Vasquez's claims against Med Mart with prejudice.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); TEX. R. APP. P. 43.3.

Phylis J. Speedlin, Justice

---

[2] We do not remand the cause to the trial court for determination of reasonable attorney's fees and costs of court incurred by Med Mart because Med Mart did not request same in its motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(1) (Vernon Supp. 2009).