*Court of Appeals*
*Fourth Court of Appeals District of Texas*





# OPINION

No. 04-10-00727-CV

**SAN ANTONIO EXTENDED MEDICAL CARE, INC**. d/b/a Med Mart,
Appellant

v.

Ruben **VASQUEZ**, Individually and as Administrator of the Estate of Ruben Vasquez, Jr.
Deceased & Oralia Vasquez, Joe Jimenez and Rosa Ward,
Appellees

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-20411
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:          Karen Angelini, Justice
                  Phylis J. Speedlin, Justice
                  Steven C. Hilbig, Justice

Delivered and Filed:  August 17, 2011

REVERSED AND RENDERED

San Antonio Extended Medical Care, Inc. d/b/a Med Mart ("Med Mart") challenges the trial court's order denying its motion to dismiss the underlying lawsuit for failure to file a medical expert report required by statute. Because we conclude the trial court erred in denying the motion to dismiss, we reverse the trial court's order and render judgment dismissing the lawsuit with prejudice.

**BACKGROUND**

This is the second time this case has been before us on an interlocutory appeal. In *San Antonio Extended Med. Care, Inc. d/b/a Med Mart v. Vasquez*, 327 S.W.3d 193 (Tex. App.—San Antonio 2010, no pet.), we set forth the underlying facts as follows. On April 7, 2008, Ruben Vasquez, Jr. ("Mr. Vasquez") underwent a tracheostomy. Ten days after the surgery, he was discharged from the hospital under doctor's orders to receive home oxygen therapy and trachea care. Med Mart delivered two oxygen tanks to Mr. Vasquez's home on April 17, 2008. The following day, Mr. Vasquez's wife called Med Mart and informed them that her husband was running low on oxygen. She again informed Med Mart that the oxygen supply was low on April 19, but another delivery was not made. Later that day, Mr. Vasquez became unconscious and was transported to the hospital by EMS. He died the next day.

Thereafter, on December 9, 2008, Ruben Vasquez, individually, and as administrator of the Estate of Ruben Vasquez, Jr., deceased and Oralia Vasquez, Joe Jimenez, and Rosa Ward (collectively, "Vasquez") sued Med Mart alleging, among other claims, that Mr. Vasquez's death was proximately caused by the negligent acts and/or omissions of Med Mart, including: failing to provide adequate oxygen tanks as ordered; failing to respond to requests by Mr. Vasquez's family for an adequate oxygen supply; failing to institute safeguards to ensure that patients such as Mr. Vasquez would always have an adequate supply of the medical supplies, including oxygen; and failing to provide adequate oxygen supply ordered by his treating doctors. On January 12, 2009, Vasquez hand delivered a *Stowers*[1] demand letter to counsel for Med Mart. Attached to the letter were nine exhibits, one of which was an autopsy report authored by Dr. Louis A. Levy; Dr. Levy's curriculum vitae was also included.

---

[1] *G.A. Stowers Furniture Co. v. Am. Indem. Co*., 15 S.W.2d 544 (Tex. 1929).

On May 14, 2009, Med Mart filed a motion to dismiss claiming Vasquez failed to serve his 120-day expert report as required by the Medical Liability Act detailed in section 74.351(a) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011). On May 20, 2009, Vasquez filed a motion to strike the motion to dismiss and a response to the motion to dismiss claiming that he is not subject to the requirements of section 74.351 because he did not assert a health care liability claim against Med Mart and because Med Mart is not a health care provider. Vasquez alternatively argued that if his suit is in fact governed by the Act, he complied with section 74.351 by timely filing an expert report authored by Dr. Levy, and that Med Mart waived any objections to Dr. Levy's report when it failed to file objections within 21 days of service. The trial court denied the motion to dismiss without making findings of fact or conclusions of law, but orally stated that the evidence did not demonstrate Med Mart to be a health care provider.

Med Mart filed its first interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West 2008). After a review of the evidence before the trial court, we concluded Med Mart met the statutory definition of a "health care provider." *Vasquez*, 327 S.W.3d at 198-99. We further held Vasquez's suit alleged a departure from the accepted standards of health care, thereby constituting a health care liability claim subject to the expert report requirements of the Act. *Id.* at 199. Because of the trial court's erroneous determination that Med Mart did not qualify as a health care provider, it never reached Vasquez's responsive motion to strike. Accordingly, we reversed and remanded the case to the trial court for further proceedings. *Id.* at 200.

On remand, Med Mart again filed a motion to dismiss Vasquez's suit for failure to have timely filed an expert report. Med Mart specifically argued the written autopsy report signed by

Dr. Levy did not satisfy the statutory requirements of an expert report and was so deficient as to constitute "no report." In response, Vasquez argued Med Mart waived all objections to Dr. Levy's report because it had not filed objections to the report within 21 days after it was served. The trial court heard arguments by both parties and subsequently denied Med Mart's motion to dismiss by a written order signed September 17, 2010 without stating a basis for its denial. Med Mart now challenges the September 2010 order.

### APPLICABLE LAW AND STANDARD OF REVIEW

At issue in this appeal is whether the trial court abused its discretion by denying Med Mart's motion to dismiss Vasquez's suit. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West 2011). We review a trial court's order denying a motion to dismiss for failure to have timely filed a required expert report under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001); *Pedroza v. Toscano*, 293 S.W.3d 665, 666 (Tex. App.—San Antonio 2009, no pet.); *Holguin v. Laredo Reg'l Med. Ctr., L.P.*, 256 S.W.3d 349, 352 (Tex. App.—San Antonio 2008, no pet.).

Under current law, a health care liability claimant is required to serve an expert report with curriculum vitae by the 120th day after the original petition is filed for each physician or health care provider named in the suit. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). An expert report is defined as:

> [A] written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6) (West 2011). If the required report has not been served by the 120-day deadline, on proper motion by a defendant, the trial court shall dismiss the suit with prejudice

and award reasonable attorney's fees and court costs incurred by the physician or health care provider. *Id.* § 74.351(b). If, however, the required report has not been served within the specified time period because elements of the report are deficient, the trial court may grant one 30-day extension to the claimant in order to cure the deficiency. *Id.* § 74.351(c) (West 2011). A defendant physician or health care provider can waive all objections to an expert report by failing to file and serve any objection to the sufficiency of the report no later than the 21st day after the date the expert report was served. *Id.* § 74.351(a).

The Supreme Court of Texas recently addressed whether an inadequate expert report can contain so many deficiencies as to be incurable, and thus not subject to the Act's thirty-day extension because no report was timely filed in the first instance. *See Scoresby v. Santillan*, — S.W.3d —, No. 09-0497, 2011 WL 2586860 (Tex. July 1, 2011). In *Scoresby*, the plaintiff sued two physicians for medical malpractice. *Id.* at *1. The plaintiff timely served the physicians with a letter written by Dr. Charles D. Marable; the letter did not attach Marable's curriculum vitae or describe his credentials or experience other than to state he is "a Board-Certified neurologist." *Id.* Marable concluded the letter by opining that both physicians violated the standard of care. *Id.* at *2. The physicians timely objected that the letter was inadequate as an expert report, and also argued that Marable's letter was so woefully deficient that it did not even qualify as an expert report under the Act to meet the 120-day deadline, and moved the court to dismiss the case with prejudice and award reasonable attorney fees and costs. *Id*. at *3. The trial court denied the physicians' motions to dismiss, and granted the plaintiff a thirty-day extension to cure the deficiencies in the report. *Id.* The physicians appealed, persisting in their contention that Marable's letter was too inadequate to qualify as an expert report, and therefore the Act did not permit an additional thirty days to cure the deficiencies. *Id*. The Fort Worth Court of

Appeals dismissed the physicians' appeal for want of jurisdiction, holding that pursuant to *Ogletree v. Matthews*,[2] a trial court's decision to grant a thirty-day extension is not subject to appellate review. *Scoresby v. Santillan*, 287 S.W.3d 319, 325 (Tex. App.—Fort Worth 2009). The appellate court stressed that an expert report could be either absent, i.e., not timely served, or deficient, but declined to recognize a third category of expert reports in which a timely served report is so deficient as to constitute no report at all. *Id*.

The physicians appealed to the Supreme Court, which affirmed the judgment of the court of appeals. After considering the Act's text and purpose, the Supreme Court held that "a document qualifies as an expert report if it contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit." *Scoresby*, 2001 WL 2586860 at *1. The court concluded that "a thirty-day extension to cure deficiencies in an expert report may be granted if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Id*. at *7. The court recognized that this is a "minimal standard," but considered it necessary to avoid multiple interlocutory appeals and to give claimants the opportunity to show that their claim has merit. *Id*.

### ANALYSIS

On appeal, Med Mart maintains that the trial court abused its discretion in denying Med Mart's motion to dismiss for failure to file an expert report because no expert report was served. Med Mart contends that the autopsy report in this case is not a good faith effort to comply with the definition of an expert report. Vasquez responds that the timely served autopsy report is an expert report, and therefore Med Mart waived any objection to the report by not objecting within 21 days of service. Given the standard recently enunciated in *Scoresby*, we must determine

---

[2] *Ogletree v. Matthews*, 262 S.W.3d 316 (Tex. 2007).

whether the autopsy report served in this case meets the requirements of a section 74.351 expert report, thus requiring Med Mart to object within 21 days.[3]

In reviewing the document at issue, we first note it is titled "Autopsy Protocol." It consists of five full typed pages. The first paragraph is titled "Clinical Summary" and states in part:

> This is a morbidly obese Hispanic male with a history of sleep apnea which was treated by tracheostomy. He was sent home and reportedly was to receive oxygen and tracheostomy supplies from a local vendor. The vendor did not deliver the supplies as promised and the patient developed respiratory difficulties. He was transferred to Jourdanton Hospital and was comatose on arrival. He subsequently expired of apparent respiratory arrest.

The first paragraph ends with the only direct reference to Med Mart—"Medmart (sic) was to provide the local supplies, some of which [Mr. Vasquez] already had." Thereafter, Dr. Levy presents his clinical findings and observations gained by his external, internal, and microscopic examinations of Mr. Vasquez's body to include examinations of his heart, lungs, neck, liver, spleen, pancreas, adrenals, kidneys, GI tract, and head. Finally, Dr. Levy lists fifteen principle autopsy findings and ends with a paragraph titled "Comment" which concludes as follows:

> Respiratory failure as a complication of morbid obesity is the most likely cause of death. Other contributing factors may include the hiatal hernia, lack of supplemental oxygen (empty tanks), mechanical obstructions, complication of hypertrophic cardiomyopathy, etc. but I cannot specifically evaluate or quantitate these for the reasons stated.

Nowhere in the document is there a single reference to any applicable standard of care, the manner in which the care rendered by Med Mart failed to meet the standard, or the causal relationship between any claimed failure by Med Mart and Mr. Vasquez's death as required by statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). The document at issue extensively reports autopsy findings from external, internal, and microscopic examination; and,

---

[3] We note that the trial court ruled on the motion to dismiss before the Supreme Court issued the *Scoresby* opinion.

as its title suggests, appears on its face to be simply a report of Dr. Levy's clinical findings. None of the statutory requirements for an expert report, as it is defined under section 74.351 of the Act, were met or even attempted. Aside from stating that Med Mart failed to deliver the supplies, the report is silent as to the standard of care Med Mart was to provide, how Med Mart fell short, and how that shortcoming caused Mr. Vasquez's death.

The purpose of a section 74.351 expert report is to inform the defendant of the specific conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008); *Palacios*, 46 S.W.3d at 879. The autopsy report here does neither. The Supreme Court has recently instructed that, at a minimum, an expert report must (1) be timely served; (2) contain the opinion of an individual with expertise that the claim has merit; and (3) implicate the defendant's conduct. *Scoresby*, 2011 WL 2586860, at *7. The autopsy report here wholly fails as to the second prong. Dr. Levy merely opines as to the suspected cause of death and "other contributing factors," but fails to opine on whether Vasquez's claims are meritorious. That Med Mart failed to deliver the oxygen tanks is within the realm of common knowledge. What is lacking is an opinion as to whether an adequate supply of oxygen was delivered in the first instance, or whether the tanks were set to the correct flow rate, i.e., information that could only be determined by the specialized knowledge of a health care expert. Because Dr. Levy does not provide his opinion as to whether Vasquez's claims have merit, we hold that Dr. Levy's autopsy report does not meet the standard for an expert report as enunciated in *Scoresby*. *Scoresby*, 2011 WL 2586860, at *7 (holding expert report is not curable if it does not contain the opinion of an individual with expertise that the claim has merit); *see also Bogar v. Esparza*, 257 S.W.3d 354, 364, 368 (Tex. App.—Austin 2008, no pet.) (holding physician's report which opined about the cause of death

without explaining who caused it or how was essentially a "second autopsy report" that failed entirely to implicate the conduct of a defendant; such a report is not merely deficient, but is in effect no report as to that defendant).

Because Dr. Levy's autopsy report is not an expert report as defined by the standard set out in *Scoresby*, the trial court did not have a basis on which to deny Med Mart's motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (trial court has no discretion but to dismiss case upon proper motion when no expert report is timely served). We reverse the trial court's order denying Med Mart's motion to dismiss, and render judgment dismissing the cause with prejudice.

Phylis J. Speedlin, Justice