

NUMBER 13-14-00756-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

VALLEY BAPTIST MEDICAL
CENTER-BROWNSVILLE,                                              Appellant,

v.

ROSALINDA BATTLES, GERALD
BATTLES, AS SURVIVING SPOUSE
OF ROSALINDA BATTLES, AMANDA
GISELLE BATTLES, AS SURVIVING
CHILD OF ROSALINDA BATTLES,
AND JEREMY BLAKE BATTLES, AS
SURVIVING CHILD OF ROSALINDA
BATTLES,                                                        Appellees.

On appeal from the 444th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

## Before Justices Rodriguez, Garza and Longoria
## Memorandum Opinion by Justice Longoria

Appellant Valley Baptist Medical Center ("VBMC") brings this interlocutory appeal in a healthcare liability claim concerning the adequacy of an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West, Westlaw through 2015 R.S.). By a single issue, VBMC asserts that the trial court erred in denying its motion to dismiss. According to VBMC, dismissal was mandatory since appellees did not file a qualifying expert report within the statutory timeframe. We reverse and render, in part, and reverse and remand, in part.

## I. BACKGROUND

On July 24, 2013, the surviving spouse and children (collectively, "appellees") of Rosalinda Battles filed suit against VBMC for the wrongful death of Rosalinda, who died after surgery there to remove her gallbladder. On November 21, 2013 appellees served VBMC with an expert report from Nurse Erin K. O'Malley. This report listed O'Malley's qualifications as an expert, as well as the following:[1]

> You have asked me for my opinion on the standards of care, breaches of said standards, and the basis of same in the case of Battles vs. Valley Baptist Medical Center.
>
> . . . .
>
> This report has been rendered in a professional, diligent manner, and is based on the facts obtained from the materials provided me, as well as my education, training and clinical expertise in general nursing care. This report is intended to be a fair summary of my opinions.

---

[1] We have excluded the qualification section since it is not in dispute on appeal.

I have reviewed the following records provided by your office regarding Mr. Bradford [sic]:

- Autopsy Report

- Lab Reports

- Medical Records from Valley Baptist Medical Center

Summary:

On 7/25 Ms. Battles a 47yo female entered Valley Baptist Medical Center for a routine cholecystectomy and was admitted to a short stay unit. The procedure was done without incident. The patients [sic] vital signs remained stable throughout the procedure, and in post-operative care. That evening around 5:30 pm the patient started complaining of headaches, nausea, and vomiting. At 6:12 pm the patient exhibited seizure activity. The patient lost consciences [sic], and a code was called. The patient was intubated, given Lovenox, and transferred to the intensive care unit. The patient was taken to CT scan, which showed minimal edema, and no intracranial bleeding. The CT angiogram of the chest showed no pulmonary embolism. The CT scan of the abdomen showed no fluid collection. The patient developed a sub arachnoid and subdural hemorrhage. This caused cerebral edema, hemorrhage, necrosis, herniation at the brain stem area which eventually caused death. The family was aware of her condition and decided that Ms. Battles should be taken off life support.

VBMC timely objected to the expert report on the grounds that it: 1) failed to set out the appropriate standard of care; 2) failed to set forth how VBMC breached the standard of care; and 3) failed to identify and explain the causal link between VBMC's alleged breaches of the standard of care and the plaintiff's injuries. VBMC moved to dismiss the case or, in the alternative, give appellees thirty days to cure the deficient expert report if the trial court found the report deficient and if the appellees requested such an extension. On January 8, 2014, the trial court granted appellees thirty days to cure the deficiencies in the report. On February 7, 2014, appellees filed an updated expert report from O'Malley. The second report was identical to the first except that it added the following paragraph:

3

Based on information reviewed to date, I cannot fully say that the standard of care concerning the care of Mrs. Battles was breached nor can I say it was complied with. There is evidence that the nursing staff did not notify the operating physician of Mrs. Battles' symptoms for nausea and headaches. If these symptoms were reported prior to seizure activity, then a diagnostic testing such as the CT scan could have been performed earlier. However, the CT scan done after the seizure episode did not show the impending sub arachnoid and subdural hemorrhage. However, I find that if the CT [s]can was done sooner and with more extensive views the sub subarachnoid and subdural hemorrhage could have been seen prior to seizure activity. The nursing staff disregarded Mrs. Battles' symptoms and did not inform the operating physician of her condition. Had this been done, a neurosurgeon could have been called before Mrs. Battles' seizure activity occurred and may have avoided her catatonic state and, ultimately, her death.

On March 12, 2014, VBMC objected to the second expert report, again stating that the report failed to meet the statutory requirements, and moved for dismissal. On December 10, 2014, the trial court denied VBMC's motion to dismiss. VBMC brought this appeal.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on a motion to dismiss under section 74.351 of the Texas Civil Practice and Remedies Code for abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006). "The trial court abuses its discretion if it acts unreasonably or arbitrarily or without reference to any guiding rules or principles." *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex. 2003). The court of appeals cannot reverse a decision committed to the trial court's discretion if the court of appeals simply disagrees with the trial court's judgment. *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41–42 (Tex. 1989) (orig. proceeding). The trial court's decision must result in a "clear and prejudicial error" to be reversible. *Id.*

4

The Texas Medical Liability Act, codified in Chapter 74 of the Civil Practice and Remedies Code, governs the process of serving expert reports in health care liability suits. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West, Westlaw through 2015 R.S.). Section 74.351(a) states that the plaintiff in a medical liability suit has 120 days to serve each defendant with an expert report. *Id.* § 74.351(a). Chapter 74 defines an expert report as:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). Section 74.351(a) states that defendants have twenty-one days upon receipt of the report to object to any deficiencies; failure to object results in waiver of all objections to the expert report. *Id.* § 74.351(a)(1). Under section 74.351(b), if no report is filed, the trial court shall enter an order dismissing the suit and awarding the affected physician or health care defendant with attorney's fees and costs. *Id.* § 74.351(b). However, "if an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient," the court may grant a thirty-day extension for the plaintiff to cure the deficiencies. *Id.* § 74.351(c). As the Supreme Court of Texas has noted, the Act's purpose is to strike a delicate balance between deterring frivolous law suits without needlessly disposing of meritorious claims. *Leland v. Brandal,* 257 S.W.3d 204, 208 (Tex. 2008). In general, trial courts should "err on the side of granting claimants' extensions." *Samlowski v. Wooten*, 332 S.W.3d 404, 411 (Tex. 2011). This way, meritorious suits will have a chance to be heard on the merits before being dismissed; only frivolous suits should be dismissed from the outset. *Id.*

However, a string of Texas Supreme Court cases have clarified what constitutes an adequate expert report. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013); *Scoresby v. Santillan*, 346 S.W.3d 546 (Tex. 2011); *Samlowski,* 332 S.W.3d at 411; *Jelinek v. Casas*, 328 S.W.3d 526 (Tex. 2010); O*gletree v. Matthews*, 262 S.W.3d 316 (Tex. 2007). In *Ogletree*, the Texas Supreme Court rejected the argument that a deficient report is the same as no report under the Act. 262 S.W.3d at 320. The Court recognized that the Act differentiates between a nonexistent report and a report that is filed in good faith but ultimately falls short of the statutory requirements such as by failing to state the applicable standard of care. *Id.* Nonexistent reports lead to dismissal whereas merely deficient reports should lead to a thirty-day extension to allow an opportunity for deficiencies to be cured. *Id.* The Court in *Scoresby* addressed the specific question of whether an expert report can be "so lacking in substance that it does not qualify as an expert report." 346 S.W.3d at 555*.* The Court affirmed its previous decision in *Ogletree* but with a caveat: "[t]o stretch the meaning of deficient to include a sheet of paper with the two words, 'expert report', written on it would mock the Act's requirements." *Id*. at 556. Looking to past decisions, the Court noted that 74.351 requires "an objective good faith effort to comply" with the statutory requirements. *Id.*

Based on this understanding of the Act, the Court created a three-prong test to determine whether an expert report is adequate: the report must 1) "be served by the statutory deadline"; 2) "inform the defendant of the specific conduct the plaintiff has called into question"; and 3) "provide a basis for the trial court to conclude that the claims have merit." *Id*. at 555-57 (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex. 2001)). To determine if the three elements are present, the trial

6

court must look no further than the four corners of the expert report; any "omissions may not be supplied by inference." *Id.* (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)). If any element is missing, then no expert report has been filed and the case should be dismissed regardless of when the defendant objects. *See id.*; *see also Haskell v. Seven Acres Jewish Senior Care Servs., Inc.*, 363 S.W.3d 754, 759 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding that if a report is so deficient as to constitute no report at all, the twenty-one day deadline to object is never triggered and the trial court is "required to dismiss"); *Velandia v. Contreras*, 359 S.W.3d 674, 679 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (stating that dismissal is automatic, regardless of when the defendant objects, if the report filed constitutes no report at all); *see also San Antonio Extended Med. Care, Inc. v. Vasquez*, 358 S.W.3d 685, 691 (Tex. App.—San Antonio 2011, pet. dism'd w.o.j.) (holding that the trial court "did not have a basis" to deny defendant's motion to dismiss because the underlying expert report was not an expert report as defined in *Scoresby*). The court further elaborated in a later opinion that as long as there is "at least one viable liability theory, as evidenced by an expert report," the claim is not frivolous and should proceed forward. *Potts*, 392 S.W.3d at 631.

### III. DISCUSSION

VBMC contends in a single issue that the trial court had no discretion to deny its motion to dismiss because O'Malley's report did not meet the statutory minimum requirements to qualify as an expert report. We agree. We conclude that under the test set forth in *Scoresby*, O'Malley's second expert report failed to comply with the statutory requirements of section 74.351. Thus, it was an abuse of the trial court's discretion to deny VBMC's second motion to dismiss.

In order to meet the statutory requirements, *Scoresby* requires that the report: 1) be filed in the statutory deadline; 2) implicate the defendant's conduct; and 3) contain the opinion of an individual with expertise that the claim has merit. 346 S.W.3d at 557. The second report was filed within the statutory thirty-day deadline for filing an amended report. Appellee's second report, however, is wholly deficient under the second and third prongs of the *Scoresby* test. O'Malley never indicates her opinion regarding whether or not the claim has any merit nor does she ever implicate VBMC's conduct. *Id.* at 555.

The language of the report implies that O'Malley will offer her opinion on the merit of the claim and on the applicable standards of care but ultimately mentions neither. As discussed earlier, the court may not make any inferences in regard to the expert report. *See Wright*, 79 S.W.3d at 52. Without making inferences, we find nothing in the four corners of this report to suggest that O'Malley believes that appellees' claims have any merit. To the contrary, O'Malley's language strongly implies that this case has no merit: "I cannot fully say that the standard of care of Mrs. Battles was breached nor can I say it was complied with." That language specifically contradicts the requirement that the report must assert that the claim has merit. *See Scoresby,* 346 S.W.3d at 557.

Furthermore, O'Malley's second report never affirmatively accused VBMC of doing anything wrong. The report never addressed the issue of whether or not VBMC's actions caused harm to Rosalinda, never cited an instance where VBMC's actions fell below the standard of care, and never even indicated what the standard of care in this situation would be. Instead of affirmatively claiming that the suit has merit, O'Malley uses speculative language that never truly implicates VBMC's actions in a way to make them liable. The amended report speculates as to what might have happened if certain steps

8

were taken (what "could" have happened or what "may" have happened) but it never asserts that VBMC's actions actually fell below the standard of care. O'Malley asserts that the subdural hemorrhage might have been identified if CT scans were performed earlier, but O'Malley never claims that VBMC fell below the applicable standard of care by performing the scans when it did. O'Malley comments that the CT scan could have been performed earlier if the nurses reported Battles's symptoms earlier but once again fails to state whether failing to report symptoms earlier was breaching a standard of care. The report does not establish any theory of liability that would allow appellees to prevail. *See Potts*, 392 S.W.3d at 631. A report like the second one in this case is no report under section 74.351. *See Scoresby*, 346 S.W.3d at 555. As such, VBMC's obligation to object was never even triggered and it was entitled to automatic dismissal. *See Velandia,* 359 S.W.3d at 679; *Haskell*, 363 S.W.3d at 759; *Vasquez*, 358 S.W.3d at 691.

Even though it may be "impossible to draw precisely" the lines between an adequate report, a deficient report, and no report at all, in the present case we conclude that it was an abuse of discretion to find that O'Malley's second report satisifed the statutory threshold. *See Jelinek*, 328 S.W.3d at 542. We therefore conclude that the trial court erred in denying VBMC's motion to dismiss. We sustain VBMC's sole issue.

## IV. CONCLUSION

We reverse the order of the trial court order denying VBMC's motion to dismiss; render judgment dismissing Battles's suit against VBMC with prejudice; and remand for

a determination of attorney's fees and costs owed to VBMC, as required by section 74.351. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West, Westlaw through 2015 R.S.).

NORA L. LONGORIA
Justice

Delivered and filed the
25th day of June, 2015.